1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

7
8
9  LAMONT SHEPARD,                          CASE NO. 1:09-cv-00809-LJO-BAM PC

10                    Plaintiff,            FINDINGS AND RECOMMENDATIONS
                                           RECOMMENDING DENYING PLAINTIFF'S
11      v.                                  MOTION FOR SUMMARY JUDGMENT

12  T. QUILLEN, et al.,                      (ECF. Nos. 73, 75, 78-81, 83)

13                    Defendants.          FINDINGS AND RECOMMENDATIONS
                                           RECOMMENDING GRANTING IN PART AND
14                                          DENYING IN PART DEFENDANTS' MOTION
                                           FOR SUMMARY JUDGMENT
15
                                           (ECF Nos. 74, 76, 77)
16
17  _____/       OBJECTIONS DUE WITHIN THIRTY DAYS

18          **Findings and Recommendations on Motion for Summary Judgment**

19  **I.    Background**

20          Plaintiff Lamont Shepard ("Plaintiff") is a state prisoner proceeding pro se and in forma

21  pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.   At this juncture, the action is

22  proceeding on Plaintiff's first amended complaint, filed September 16, 2010, against Defendant T.

23  Quillen for excessive force in violation of the Eighth Amendment and J. Wise for retaliation in

24  violation of the First Amendment.   On February 3, 2012, Plaintiff filed a motion for summary

25  judgment.  (ECF No. 73.)  Defendants filed a cross-motion for summary judgment on February 8,

26  2012.  (ECF No. 74.)  On February 21, 2012, Defendants filed an opposition to Plaintiff's motion

27  for summary judgment.  (ECF No. 75.)  Plaintiff filed an opposition to Defendants' cross motion on

28  February 23, 2012, and Defendants filed a reply on February 27, 2012.  (ECF Nos. 76, 77.)  Plaintiff

filed oppositions to declarations in Defendants' reply, and an opposition to Defendants' cross motion and a surreply on March 6, 2012.  (ECF Nos. 77-83.)

## II.   **Plaintiff's Surreply**

The Local Rules provide for a motion, an opposition, and a reply.  Neither the Local Rules nor the Federal Rules provide the right to file a surreply, and the Court neither requested one nor granted a request on the behalf of Plaintiff to file one.  Accordingly, Plaintiff's surreply, filed March 6, 2012, should be stricken from the record.

## III.   **Summary Judgment Legal Standard**

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  However, the court is to liberally construe the filings and motions of pro se litigants.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  The "party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323 (quoting Rule 56(c) of the Federal Rules of Civil Procedure).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.

The parties bear the burden of supporting their motions and oppositions with the papers they

wish the Court to consider and/or by specifically referencing any other portions of the record for consideration. Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The Court will not undertake to mine the record for triable issues of fact. Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1017 (9th Cir. 2010).

"[W]hen parties submit cross-motions for summary judgment, [e]ach motion must be considered on its own merits." Fair Hous. Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotations and citation omitted).

**IV.   Plaintiff's Motion for Summary Judgment**

    **A.   Plaintiff's Statement of Undisputed Facts**

Where a plaintiff is proceeding pro se, "we must consider as evidence in his opposition to summary judgment all of [plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." Jones v. Blanas, #93 F.3d 918, 923 (9th Cir. 2004). A review of Plaintiff's motion for summary judgment, opposition to Defendants' motion for summary judgment and replies reveals that none of these documents were attested to under penalty of perjury. However, Plaintiff has attached his complaint, which was attested to under penalty of perjury, as an exhibit to his motion for summary judgment. Accordingly, Plaintiff's complaint, attached as an exhibit, and first amended complaint shall be used to compile Plaintiff's statement of undisputed facts.

1.    On July 15, 2008, Defendant Quillen conducted a close count and approached Plaintiff's cell. Defendant Quillen yelled out, "Shepard." Plaintiff pointed to his identification taped at eye level on the cell door window. Defendant Quillen then told Plaintiff that he had to say it, which Plaintiff took to mean he must state his California Department of Corrections and Rehabilitation ("CDCR") number.[1] (First Am. Compl. 6,[2] ECF No. 26; Opp., Exhibit G 25-

---

[1]Defendants do not dispute that Defendant Quillen conducted a close count on July 15, 2008, or that he called out Plaintiff's name, however the remaining allegations are disputed.

[2]All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1      26, ¶ 5, ECF No. 73-1.)

2      2.     Defendant Quillen left and then returned with Officer Fujioka.  Plaintiff was ordered to cuff

3             up and was pulled out of his cell by Defendant Quillen and placed against the wall between

4             two cells.[3]  Officer Fujioka retrieved Plaintiff's identification at the direction of Defendant

5             Quillen.  Defendant Quillen told Plaintiff that since he did not want to talk to him, Plaintiff

6             could go sit in the cages for a while.  Plaintiff responded that Defendant Quillen could keep

7             Plaintiff there forever because he was not going to talk to Defendant Quillen.  (ECF No. 26

8             at 6; ECF No. 73-1 at 26, ¶¶ 5, 6.)

9      3.     Defendant Quillen then escorted Plaintiff with his left hand on Plaintiff's right arm.  (ECF

10            No. 26 at 6; ECF No. 73-1 at 26-27, ¶ 7.)  As he was escorting Plaintiff, Defendant Quillen

11            changed his grip, grabbing hold of Plaintiff's left hand/wrist and bicep and began bending

12            Plaintiff's arm and wrist in an upward position to the breaking point.  Plaintiff told

13            Defendant Quillen to release his hold because he was hurting Plaintiff.  Defendant Quillen

14            refused to release his hold on Plaintiff.  (ECF No. 26 at 7-8; ECF No. 73-1 at 26-27, ¶ 7.)

15                   When they reached the program office, Defendant Quillen tried to slam Plaintiff

16            against the program office wall and Plaintiff had to put his foot out to avoid impact.  (ECF

17            No. 26 at 8; ECF No. 73-1 at 27, ¶ 8.)  The sergeant came out and asked Defendant Quillen

18            and Officer Fujioka if Plaintiff was out of his cell running around and the officers responded

19            affirmatively.  (ECF No. 26 at 9;ECF No. 73–1 at 27, ¶ 8.)  Plaintiff informed the sergeant

20            that he was not out of his cell because he was on orientation status so was not allowed out

21            of his cell.  Defendant Quillen then told the sergeant that Plaintiff was resisting him.  (ECF

22            No. 26 at 9; ECF No. 73–1 at 27, ¶ 9.)  Defendant Quillen escorted Plaintiff to a cage and

23            tried to slam Plaintiff into the back of the cage requiring Plaintiff to put out his foot to avoid

24            impact.[4]  (ECF No. 26 at 8; ECF No. 73-1 at 27, ¶ 8.)

25     4.     Plaintiff requested that his handcuffs be removed, but his request was denied.  (ECF No. 26

26     _____

27            [3]Defendant Quillen disputes that Plaintiff was pulled out of his cell.

28            [4]Defendants do not dispute that Plaintiff was escorted and placed in a holding cell, however the remainder
       of the facts are disputed.

at 8.) Plaintiff slipped his handcuffs to the front because his shoulder was hurting. (ECF No. 26 at 8; ECF No. 73-1 at 27, ¶ 8.) Sergeant Martinez came in and removed the handcuffs. He noticed that Plaintiff had a cut on his wrist and asked what happened. (ECF No. 26 at 8; ECF No. 73-1 at 27, ¶ 8.) Plaintiff explained that Defendant Martinez had bent his wrist and arm causing injury to Plaintiff's wrist and shoulder.[5] (ECF No. 26 at 8-9; ECF No 73-1 at 27, ¶ 8.) The sergeant asked if Plaintiff was making allegations against the officer. (ECF No. 26 at 9; ECF No. 73-1 at 27, ¶ 9.)

5.    Defendant Wise then came in, introduced himself to Plaintiff, and asked what had happened. Plaintiff explained what had transpired. (ECF No. 26 at 9; ECF No. 73-1 at 28, ¶ 10.) Defendant Wise told Plaintiff that he was going to place Plaintiff in administrative segregation for making allegations against his staff because that is all he could do for Plaintiff. However, before he placed Plaintiff in administrative segregation, he needed to get a video. Plaintiff asked Defendant Wise if he was going to punish Plaintiff for what staff did to him. (ECF No. 26 at 10; ECF No. 73-1 at 28, ¶ 10.) Defendant Wise responded yes. (ECF No. 26 at 10.) Defendant Wise left and a licensed vocational nurse came in and noted Plaintiff's injuries.[6] (ECF No. 26 at 10; ECF No. 73-1 at 28, ¶¶ 10, 11.)

Plaintiff was later seen by a nurse and doctor, his shoulder and wrist were x-rayed and Plaintiff was informed that he had a small fracture to his wrist. Plaintiff was placed in administrative segregation for making allegations against Defendant Quillen. (ECF No. 26 at 10; ECF No. 73-1 at 28-29, ¶ 11, 12.)

**B.    Plaintiff's Position**

Plaintiff argues that he is entitled to summary judgment because Defendant Quillen used force where none was required and Defendant Wise retaliated against him for reporting Defendant Quillen by placing him in administrative segregation for ninety days for disciplinary reasons.

---

[5]Defendants do not dispute that Plaintiff slipped his hand cuffs, however the remainder of the facts are disputed.

[6]Defendants do not dispute that Defendant Wise arrived at the program office and asked Plaintiff what happened and that Plaintiff was examined by a licensed vocational nurse, however the remainder of the facts are disputed.

(Plaintiff's Motion for Summary Judgment 7, ECF No. 73.)

Plaintiff argues that Defendant Quillen was angry that Plaintiff refused to talk to him on July 15, 2008, and decided to harm Plaintiff. The force used by Defendant Quillen was unnecessary and wanton infliction of pain causing a small fracture to Plaintiff's wrist. (Id. at 13.) Defendant Quillen's use of force was clearly done to cause harm to Plaintiff. When Plaintiff complained to Defendant Quillen that he was hurting Plaintiff, Defendant Quillen only grunted and continued his assault upon Plaintiff. (Id. at 14.) Plaintiff contends that Defendant Quillen's use of force was part of a training exercise where he was pulled from his cell while handcuffed and placed in a holding cell. Plaintiff states that he was not a threat to Defendant Quillen because he was in his assigned cell and in handcuffs. (Id. at 14.)

Plaintiff also argues that Defendant Wise told Plaintiff that he knew the allegation against Defendant Quillen was true because he had complaints against Defendant Quillen from other inmates. Defendant Wise offered to "fix this" by having Plaintiff recant his statement and when Plaintiff refused he was told he would be placed in the hole. Plaintiff claims that Defendant Wise placed him in administrative segregation for punishment/disciplinary reasons. (Id. at 14.)

## C. **Defendants' Position**

Defendants argue that Plaintiff's motion should be denied because he has failed to comply with Local Rule 260(a) which requires that a motion for summary judgment be accompanied by a statement of undisputed facts. Plaintiff has failed to support each fact with particular portions of the pleadings, affidavit, deposition, or discovery document that was relied on to establish the fact.[7] (Opp. 7, ECF No. 75.)

Additionally, Defendants state that Plaintiff's motion should be denied because use of force is justified to ensure compliance when an inmate fails to follow orders. Plaintiff has failed to meet his burden of setting forth evidence to refute Defendant Quillen's claim that he did not subject

---

[7]Plaintiff is proceeding pro se in this action and, therefore, the Court shall liberally construe his pleadings. Thomas, 611 F.3d at 1150. Although Plaintiff does not set forth the evidence relied on to support his statement of undisputed facts, the Court shall use his verified first amended complaint and the complaint attached as an exhibit to compile Plaintiff's list of undisputed facts. Defendants' motion to deny Plaintiff's motion for summary judgment based on procedural deficiencies is denied.

Plaintiff to excessive force. The evidence Plaintiff submits clearly refutes Plaintiff's claims. The evidence indicates that Plaintiff's motion should be denied because there is no evidence that Defendant Quillen subjected Plaintiff to excessive force, or that Plaintiff suffered any injury due to the actions of Defendant Quillen. The evidence is clear that the injury to Plaintiff's wrist was suffered after Plaintiff was placed in the holding cell when Plaintiff decided to slip his handcuffs from the back to the front. (Id. at 8.) The injury to Plaintiff's wrist was not due to any action of Defendant Quillen, but entirely from Plaintiff's own actions. (Id. at 9.)

Secondly, it is clear that there was a need for the application of force. Plaintiff was being escorted to the program office and was resisting by not actively walking and leaning back. Both Defendant Quillen and Officer Fujioka had to place their hands on Plaintiff. Thirdly, the relationship between the need for force and force used shows there is no evidence of excessive force. Since Plaintiff was resisting some degree of force was clearly necessary and the modicum of force used was Defendant Quillen placing his hands on Plaintiff's left arm and bicep. Finally, the threat perceived by Defendant Quillen was very high. Plaintiff failed to comply with Defendant Quillen's order to state his name and inmate number, Plaintiff made sudden movements towards Officer Fujioka when he exited his cell, and he was refusing to walk while the officers were attempting to escort him to the program office. Defendant Quillen was confronted with an inmate who was disobedient, confrontational, unpredictable, and resistant. Defendant Quillen's actions of placing a hand on Plaintiff's arm and another on his bicep during the escort were entirely justified. (Id. at 9.)

Defendant Wise argues that the California Code of Regulations requires that when an inmate's presence in the general population presents a threat to the safety of himself or others, or endangers institution security, or jeopardizes the integrity of an investigation, the inmate shall be immediately removed from the general population and placed in administrative segregation. Cal. Code of Regs., tit. 15 § 3335(a). The evidence Plaintiff presents, such as the administrative segregation unit placement notice, classification records, and inmate appeal records all clearly refute Plaintiff's claim that Defendant Wise retaliated against him. (ECF No. 75 at 11.) While Plaintiff claims that he was placed in administrative segregation in retaliation for complaining about

Defendant Quillen, the evidence shows that Plaintiff's placement in administrative segregation was for his own benefit. (Id. at 12.)

Plaintiff made a complaint that one of the officers in his housing unit had assaulted him. Accordingly, he was placed in administrative segregation pending the investigation of the allegation. The correctness of the decision to place Plaintiff in administrative segregation was approved by a Captain and the classification committee. It would defy logic to leave an inmate in a housing unit while an investigation was conducted into whether an officer in that unit assaulted him. Placing the inmate in administrative segregation ensures the integrity of the investigation and protects the inmate. (Id.)

The fact that Plaintiff's stay in administrative segregation was not retaliatory is further supported by the time-line of events. Plaintiff was temporarily placed into administrative segregation on July 15, 2008, pending an investigation that Defendant Quillen assaulted him on that day. (Id.) The investigation into that allegation was concluded on October 7, 2008, and Plaintiff was returned to the general population on October 22, 2008. That Plaintiff's placement in administrative segregation was to protect the integrity of the investigation is clearly supported by the appeal documents attached to Plaintiff's motion. Plaintiff was informed on September 9, 2008, that his request to be removed from administrative segregation was denied because the investigation was still on-going. Plaintiff's appeal was partially granted at the second level on November 12, 2008, because the investigation had been concluded. There is no evidence to support Plaintiff's claim that Defendant Wise retaliated against him in violation of the First Amendment. (Id. at 13.)

### D.   **Plaintiff's Reply**

Plaintiff replies that Defendants have failed to show how he did not comply with the Local Rules and how he failed to demonstrate that there is no genuine dispute as to any material fact. (Plaintiff's Reply to Defendants Quillen and Wise's Opposition to Plaintiff's Motion for Summary Judgment 1, ECF No. 80.) Plaintiff argues that while his motion may be procedurally deficient, the motion should not be denied just because he is inexperienced. (Id. at 7.)

Plaintiff contends that the evidence demonstrates that Defendant Quillen was very angry with Plaintiff for his failure to respond to Defendant Quillen during the close custody count. (Id. at 8.)

8

1    Defendant Quillen's report show that it was dark when he approached Plaintiff's cell and an inmate

2    was seated on the upper bunk.  The operations manual states that close custody counts shall be

3    conducted utilizing a positive picture identification card. Defendants have failed to demonstrate how

4    Plaintiff's motion should be denied.  (Id. at 9.)

5         Defendants' opposition proves that Plaintiff's motion should be granted.  (Id.)  There was

6    no need for any application of force, because Plaintiff was handcuffed and no danger to Defendant

7    Quellen.  Plaintiff argues that it is untrue that Defendant Quillen did not use force against Plaintiff.

8    Plaintiff argues that video evidence was available, but he now believes that it has been destroyed.

9    Defendant Quillen contradicts himself because he states that Plaintiff was not actively walking in

10   his report, but on September 24, 2008, he states that Plaintiff was attempting to delay the escort by

11   walking slowly and becoming difficult to escort.  (Id. at 10.)  Plaintiff argues that Defendant

12   Quillen's statements regarding the events that occurred are untrue and his motion should be granted.

13   (Id. at 11.)

14        Plaintiff states that Defendant Wise took adverse action against him, by placing him in

15   administrative segregation, for making an allegation against Defendant Quillen. (Id. at 12.) Plaintiff

16   claims that his presence did not present an immediate threat to any inmate or anyone else, nor did

17   he endanger the safety of the institution.  Plaintiff did not engage in any serious misconduct, but

18   "[d]efendant Quillen, or was Plaintiff being investigated for any criminal activity [sic]." (Id. at 14.)

19   Defendant Quillen's reading of the CDCR regulation is wrong.  (Id.)

20        Plaintiff contends that he was placed in administrative segregation for a disciplinary reason,

21   as punishment inflicted by way of correction and training.  (Id. at 15.)  The investigation into the

22   allegation was completed on October 7, 2008, however Plaintiff was left in administrative

23   segregation for an additional seventeen days to try to deter Plaintiff from reporting any other officer.

24   Plaintiff was placed in administrative segregation to punish him for reporting staff misconduct.

25   Plaintiff claims there is a huge amount of evidence to support his claim against Defendant Wise. (Id.

26   at 16.)

27        The Court finds that Plaintiff has met his initial burden of informing the Court of the basis

28   for his motion, and identifying those portions of the record which he believes demonstrate the

1    absence of a genuine issue of material fact.  The burden therefore shifts to Defendants to establish

2    that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus., 475 U.S.

3    at 586 (1986).

4        **E.    Excessive Force Claim**

5            **1.    Legal Standard**

6        When a prison official stands accused of using excessive physical force in violation of the

7    cruel and unusual punishment clause of the Eighth Amendment, the question turns on whether the

8    force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

9    sadistically for the purpose of causing harm.  Hudson v. McMillian, 503 U.S. 1, 7 (1992) (*citing*

10   Whitley v. Albers, 475 U.S. 312, 320-21 (1986)).  In determining whether the use of force was

11   wanton and unnecessary, it is proper to consider factors such as the need for application of force, the

12   relationship between the need and the amount of force used, the threat reasonably perceived by the

13   responsible officials, and any efforts made to temper the severity of the forceful response.  Hudson,

14   503 U.S. at 7.

15       A prison official's use of force to maliciously and sadistically cause harm violates the

16   contemporary standards of decency.  Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010).  However,

17   "[n]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action."  Gaddy, 130

18   S. Ct. at 1179 (*quoting* Hudson, 503 U.S. at 9).  Factors that can be considered are "the need for the

19   application of force, the relationship between the need and the amount of force that was used, [and]

20   the extent of injury inflicted."  Whitley, 475 U.S. at 321; Marquez v. Gutierrez, 322 F.3d 689, 692

21   (9th Cir. 2003).  Although the extent of the injury is relevant, the inmate does not need to sustain

22   serious injury.  Hudson, 503 U.S. at 7; Wilkins, 130 S. Ct. at 1178-79.  The Eighth Amendment's

23   prohibition on cruel and unusual punishments necessarily excludes from constitutional recognition

24   de minimus uses of physical force.  Hudson, 503 U.S. at 9-10.

25           **2.    Discussion**

26       Plaintiff argues that no use of force was necessary.  Defendant Quillen presents evidence that

27   he was attempting to conduct his close custody count and Plaintiff refused to identify himself.  Upon

28   being removed from his cell, Plaintiff made a sudden movement toward Officer Fujioka, and when

1  Plaintiff was being escorted to the program office he was resisting by not actively walking.  Further,

2  Plaintiff claims that his wrist and shoulder were injured by the force used during the escort to the

3  program office, but Defendant Quillen submits evidence, and Plaintiff admits, that he slipped his

4  handcuffs from the front to the back.  Defendant Quillen argues that any injuries Plaintiff suffered

5  occurred due to his slipping the handcuffs.  There is a factual dispute regarding whether Plaintiff

6  sustained injuries due to any force used by Defendant Quillen or caused the injuries himself by

7  slipping his handcuffs to the front.

8       While Plaintiff alleges that Defendant Quillen used force against him where no force was

9  needed, Defendant Quillen has submitted sufficient evidence to establish that a genuine issue of

10  material fact exists regarding whether the use of force was excessive.  The Court finds that Plaintiff's

11  motion for summary adjudication for his excessive force claim against Defendant Quillen should be

12  denied.

13       **F.**     **Retaliation**

14            **1.**     **Legal Standard**

15       Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition

16  the government may support a section 1983 claim.  <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532 (9th Cir.

17  1985); <u>see also</u> <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135 (9th Cir. 1989); <u>Pratt v. Rowland</u>, 65

18  F.3d 802, 807 (9th Cir. 1995).  A viable claim of retaliation in violation of the First Amendment

19  consists of five elements: "(1) An assertion that a state actor took some adverse action against an

20  inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the

21  inmate's exercise of his First Amendment rights, and (5) the action did not reasonable advance a

22  legitimate correctional goal."  <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567 (9th Cir. 2005); *accord*

23  <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009).

24       A plaintiff asserting a retaliation claim must demonstrate a "but-for" causal nexus between

25  the alleged retaliation and Plaintiff's protected activity (i.e., filing a legal action).  <u>McDonald v. Hall</u>,

26  610 F.2d 16, 18 (1st Cir. 1979); *see* <u>Mt. Healthy City School Dist. Bd. of Educ. v. Doyle</u>, 429 U.S.

27  274 (1977), *superceded by statute on other grounds as stated in* <u>Rivera v. U.S.</u>, 924 F.2d 948 (9th

28  Cir. 1991).  The prisoner must submit evidence, either direct or circumstantial, to establish a link

11

between the exercise of constitutional rights and the allegedly retaliatory action. Pratt, 65 F.3d at 806. Timing of the events surrounding the alleged retaliation may constitute circumstantial evidence of retaliatory intent. *See* Pratt 65 F.3d at 808; Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1316 (9th Cir. 1989).

### 2.   **Discussion**

Plaintiff argues that Defendant Wise placed him in administrative segregation for reporting the misconduct of Defendant Quillen. Defendant Wise presents evidence that he placed Plaintiff in administrative segregation because his presence on the facility jeopardizes the integrity of the investigation into the matter. (ECF No. 75-3 at 11.)

Retaliation by a state actor for the exercise of a constitutional right is actionable under section 1983, even if the act would have been proper had it been taken for a different reason. Mt. Healthy City Bd. Of Educ., 429 U.S. at 283-84. Plaintiff claims that upon reporting the use of excessive force by Defendant Quillen, Defendant Wise told him that he was going to be placed in administrative segregation. When Plaintiff asked if he was being punished for reporting the misconduct, Defendant Wise replied affirmatively. (PUF 5.) Defendant Wise submits a copy of the administrative segregation placement notice in which he noted that Plaintiff was being placed in administrative segregation because his presence on the facility jeopardizes the integrity of the investigation. (ECF No. 75-3 at 43.)

In a retaliation action, the plaintiff must show a causal connection between the defendant's retaliatory amicus and plaintiff's subsequent injury. Hartman v. Moore, 547 U.S. 250, 259 (2006). While Plaintiff argues that he was placed in administrative segregation for reporting the staff misconduct, Defendant Wise has submitted evidence to raise a genuine issue of material fact as to whether Plaintiff was placed in administrative segregation to reasonably advance a legitimate correctional goal. Accordingly, Plaintiff's motion for summary adjudication on his retaliation claim against Defendant Wise should be denied.

///

///

///

**V.**   **Defendants' Motion for Summary Judgment**

    **A.**    **Defendants' Statement of Undisputed Facts[8]**

1.    Defendant Quillen is a correctional officer employed by the CDCR at the California State Prison, Corcoran ("CSP-Corcoran").  (Quillen Dec. ¶ 1.)

2.    On July 15, 2008, Defendant Quillen was performing the close custody count in Facility III-A at CSP-Corcoran.  (Id., Exhibits A and B.)

3.    When Defendant Quillen approached cell 3A05-139, he found the cell to be dark and there was an inmate sitting on the upper bunk.  (Id.)

4.    Defendant Quillen twice asked this inmate, later identified as Plaintiff, for his name and number.  (Id.)

5.    Twice, Plaintiff did not provide them.  (Id. at Exhibit B.)

6.    Defendant Quillen then called Sergeant Allen, the Facility Sergeant, and informed her of the situation.  (Id.)

7.    Sergeant Allen instructed Defendant Quillen to bring Plaintiff to the holding cell in the program office.  (Id.)

8.    In order to escort Plaintiff to the program office, Defendant Quillen instructed Plaintiff to submit to handcuffs, and Plaintiff complied with this order.  (Id. at Exhibits A and B.)

9.    So that Defendant Quillen could placed the handcuffs onto Plaintiff behind his back, Plaintiff stood with his back to his cell door, bent slightly at the waist, brought his hands behind his back, and then placed his hands through the open tray slot in his cell door.  (Quillen Dec. ¶ 4.)

10.    Defendant Quillen then placed the handcuffs onto Plaintiff in a standard way so that both of

---

[8] Plaintiff failed to file a verified statement of disputed facts nor admitted or denied the facts set forth by Defendant as undisputed. Local Rule 260(b). Therefore, Defendant's statement of undisputed facts is accepted except where brought into dispute by plaintiff's verified complaint or complaint attached as an exhibit to Plaintiff's motion for summary judgment. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence). A verified opposition to a motion for summary judgment may also be considered as an opposing affidavit for purposes of the summary judgment rule if it is based on facts within the pleader's personal knowledge. Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998). However, because Plaintiff's opposition was not verified, it cannot be treated as an opposing affidavit. Moran v. Selig, 447 F.3d 948, 759-60 (9th Cir. 2006).

Plaintiff's thumbs were together and facing up through the food port. (Id. at ¶ 4, Exhibit B.)

11.  Once Plaintiff was placed in handcuffs, Defendant Quillen had the control booth officer open the cell door and he instructed Plaintiff to back out of the cell facing away from Defendant Quillen and his partner. (Id. at Exhibits A and B.)

12.  Plaintiff abruptly backed out and turned to his right towards Defendant Quillen's partner, Officer Fujioka. (Id.)

13.  Defendant Quillen put his left hand on Plaintiff's left arm, above Plaintiff's left elbow and his right hand on Plaintiff's right arm above the right elbow. (Id.)

14.  Defendant Quillen then turned Plaintiff towards the wall. (Id.)

15.  Defendant Quillen then asked Fujioka to get Plaintiff's ID out of the cell. (Id.)

16.  Officer Lowe yelled from the office that he had Plaintiff's ID. (Quillen Dec., Exhibit A; Kimbrell Dec., Exhibit A.)

17.  Fujioka then retrieved Plaintiff's ID from Lowe and identified Plaintiff. (Quillen Dec., Exhibit A; Kimbrell Dec., Exhibit A.)

18.  Defendant Quillen and Fujioka then escorted Plaintiff to the program office. (Quillen Dec., Exhibits A and B.)

19.  Along the way, Plaintiff attempted to delay the escort by walking slowly and leaning back. (Quillen Dec., Exhibit B, Kimbrell Dec., Exhibit B.)

20.  Unaware of Plaintiff's intentions, Defendant Quillen placed his right hand on Plaintiff's left hand and his left hand on Plaintiff's left bicep. (Quillen Dec., Exhibit A.)

21.  At the same time, Plaintiff's conduct made it necessary for Fujioka to hold Plaintiff's right arm. (Quillen Dec., Exhibits A and B; Kimbrell Dec., Exhibit B.)

22.  At no time during the escort did Plaintiff voice any complaints about the escort or about the conduct of Defendant Quillen or Officer Fujioka.[9] (Quillen Dec., Exhibit B.)

23.  Once in the program office, Plaintiff was placed into a holding cell without incident and

---

[9]Plaintiff alleges that he told Defendant Quillen that he was hurting his arm, but Defendant Quillen just grunted and applied more pressure. (ECF No. 26 at 8.)

1  without any injuries to his person.[10]  (Quillen Dec., Exhibits A and B; Kimbrell Dec., Exhibit

2  B.)

3  24.  The act of slipping handcuffs to the front refers to when a person, who has been handcuffed

4  behind his back, manages to bring his lower body through his arms, which are cuffed at the

5  wrists, so that the handcuffs are now positioned to his front.  (Quillen Dec., ¶ 5.)

6  25.  The act of doing so will generally place a great deal of pressure on a person's hands, wrists,

7  and shoulders.  (Id.)

8  26.  Getting one's legs through will typically require forcing the handcuffs down against a

9  person's hands.  (Id.)

10  27.  If an inmate attempts to make the process easier by rotating his wrists within the handcuffs

11  he is all the more likely to hurt his wrists or hands due to the pressure being placed by the

12  handcuffs onto the wrists and hands.  (Id.)

13  28.  An inmate handcuffed in the manner in which Plaintiff was-behind his back with his thumbs

14  together and pointing up-will have a very hard time slipping his handcuffs to the front and

15  is very likely to hurt himself while doing so.  (Id. at ¶ 6.)

16  29.  This is because the arms are somewhat bent behind the back, so that the thumbs could point

17  upward during the placement of the handcuffs, and this causes the inmate's hands to be

18  positioned somewhat higher up the person's back once the handcuffs have been placed on

19  the prisoner.  (Id.)

20  30.  As a consequence, getting the handcuffs below the person's buttocks becomes more difficult.

21  (Id.)

22  31.  Once Plaintiff was placed into the holding cell in the program office, and before Fujioka

23  could remove the handcuffs from Plaintiff, Plaintiff slipped the handcuffs to his front.[11]

24  (Quillen Dec., Exhibit A and B; Kimbrell Dec., Exhibit B.)

25  _____

26  [10]Plaintiff alleges that once they reached the program office, Defendant Quillen attempted to slam him into the wall, and Plaintiff had to put his foot out to stop his face from hitting the wall.  Then when Defendant Quillen

27  placed him in the cage, he attempted to slam Plaintiff into the back of the cage.  (Id.)

28  [11]Plaintiff alleges that he requested the handcuffs be removed and his request was ignored.  After about an hour, he slipped his handcuffs to the front because his shoulder was hurting.  (Id.)

15

32.   During Plaintiff's struggle to slip the handcuffs from his back to his front, he injured his left wrist.[12]  (Quillen Dec., Exhibit A and B; Kimbrell Dec., Exhibit B.)

33.   Fujioka then removed the handcuffs. (Quillen Dec., Exhibit A and B; Kimbrell Dec., Exhibit B.)

34.   Plaintiff had no injuries and did not complaint about any injuries until after he slipped the handcuffs to his front by stepping through them.  (Kimbrell Dec., Exhibit B.)

35.   Defendant Wise was a correctional lieutenant for the CDCR at CSP-Corcoran. (Wilson Dec., Exhibit B, Wise's Response to Plaintiff's Interrogatories, Set One, Nos. 1 & 2.)

36.   Plaintiff complained to Defendant Wise that Defendant Quillen had subjected him to excessive force. (Wilson Dec., Exhibit B, Wise's Response to Plaintiff's Interrogatories, Set One, No. 4.)

37.   CDCR policy provides that, when an inmate makes a staff complaint, the inmate is to be placed in administrative segregation for his own protection pending an investigation of that complaint.  (Id.)

38.   Pursuant to CDCR policy, Plaintiff was removed from the Facility III-A general population and placed into administrative segregation on July 15, 2008.  (Kimbrell Dec., Exhibit C.)

39.   Plaintiff's administrative segregation placement was authorized by Defendant Wise pending an investigation into Plaintiff's allegation of staff misconduct.  (Id.)

40.   Based on that allegation, Plaintiff's presence in the housing unit was found to jeopardize the integrity of the investigation into Plaintiff's allegations.  (Id.)

41.   Plaintiff was to be placed into administrative segregation pending conclusion of the investigation.  (Id.)

42.   This transfer was not done as a reprisal against Plaintiff or in retaliation for having made claims of staff misconduct.  (Wilson Dec., Exhibit B, Wise's Response to Plaintiff's Interrogatories, Set One, No. 7.)

43.   Also on July 15, 2008, Plaintiff was seen by medical staff with complaints of left wrist pain.

---

[12] Plaintiff alleges that his wrist was injured during the escort by the pressure applied by Defendant Quillen. (Id. at 8-9.)

1   (Perez Dec., Exhibit A.)

2   44.   An x-ray of the left wrist was negative and found no evidence of an acute displaced fracture

3         or dislocation.[13]  (Perez Dec., Exhibits A and B.)

4   45.   On July 17, 2008, Plaintiff's placement into administrative segregation was reviewed by

5         Captain Diaz and it was determined that he was to remain in administrative segregation

6         pending review by the Institution Classification Committee ("ICC"). (Kimbrell Dec., Exhibit

7         C.)

8   46.   The reason for the placement was the pending investigation.  (Id.)

9   47.   On July 23, 2008, Plaintiff appeared before the ICC for an initial review of his administrative

10        segregation placement.  (Kimbrell Dec., Exhibit D.)

11  48.   It was noted that he was placed into administrative segregation pending investigation into his

12        allegation of staff misconduct by Defendant Quillen.  (Id.)

13  49.   The investigation was ongoing at that time.  (Id.)

14  50.   Therefore, the ICC elected to retain Plaintiff in administrative segregation pending

15        completion of the investigation.  (Id.)

16  51.   Another x-ray of Plaintiff's left wrist was conducted on August 12, 2008.  (Perez Dec.,

17        Exhibit C.)

18  52.   There was no evidence of acute displaced fracture or dislocation.  (Id.)

19  53.   On October 7, 2008, the investigation into Plaintiff's allegations of misconduct were

20        concluded and it was determined that no further investigation was warranted.  (Kimbrell

21        Dec., Exhibit E.)

22  54.   Accordingly, it was recommended that Plaintiff be removed from administrative segregation.

23        (Id.)

24  55.   On October 22, 2008, Plaintiff was moved out of administrative segregation.  (Kimbrell

25        Dec., Exhibit F.)

26  56.   Plaintiff acknowledges that he was placed into administrative segregation so that an

27

28        ───────────────────────

          [13]Plaintiff alleges that the doctor informed him that he had a small fracture in his wrist.  (Id. at 10.)

1    investigation could take place and that once the investigation was concluded he was returned

2    back to his housing unit.  (Wilson Dec., Exhibit A.)

3    **B.    Defendants' Position**

4    Defendants Quillen and Wise move for summary judgment on the grounds that there is no

5    evidence to support any of the claims against them, and in the alternative, they are entitled to

6    qualified immunity.  Defendant Quillen argues that there is no evidence that Plaintiff suffered any

7    injury due to the actions of Defendant Quillen.  While Plaintiff argues that his wrist was injured, the

8    evidence is clear that the injury to Plaintiff's wrist occurred after he was placed in the holding cell

9    and decided to slip his handcuffs from the back to the front.  Any injury suffered by Plaintiff was

10   entirely due to his own actions.  (Motion for Summary Judgment 11, ECF No. 7.)

11   It is clear that there was a need for Defendant Quillen to apply the minimal amount of force

12   that was used.  Plaintiff was resisting throughout the escort by not actively walking and leaning back.

13   Because Defendant Quillen and Officer Fujioka were unaware of Plaintiff's intentions, they had to

14   place their hands on Plaintiff's arms and hands.  (Id. at 12.)

15   The relationship between the need for force and the amount of force used also clearly shows

16   that excessive force was not used against Plaintiff.  Given that Plaintiff was resisting by leaning

17   backward and walking slowly, some force was necessary to obtain his compliance and bring him to

18   the program office.  Defendant Quillen placed his hands on Plaintiff's left hand and bicep.  (Id.)

19   Finally, the threat reasonably perceived by Defendant Quillen was very high.  Plaintiff had

20   not been complying with orders to state his name and number, made a sudden movement toward

21   Officer Fujioka when exiting his cell, and was not walking and leaning back. Defendant Quillen was

22   faced with an inmate who was disobedient, confrontational, unpredictable, and resistant.  Defendant

23   Quillen's actions of placing his hands on Plaintiff's hand and bicep were entirely justified.  (Id.)

24   Defendant Wise argues that there is no evidence that he retaliated against Plaintiff in

25   violation of the First Amendment.  The evidence does not support Plaintiff's claim that he was

26   placed in administrative segregation for complaining about Defendant Quillen.  On the contrary, the

27   evidence shows that Plaintiff was placed in administrative segregation for his own benefit.  After

28   Plaintiff complained that Defendant Quillen had assaulted him, Plaintiff was placed in administrative

1  segregation pending an investigation, consistent with Title 15 regulations.  The correctness of this
2  decision was reviewed by a captain and a classification committee.  (Id. at 14.)

3  Placing an inmate in administrative segregation during the pendency of the investigation into
4  misconduct clearly advances the legitimate correctional goal of ensuring the integrity of the
5  investigation and protecting the inmate.  That Defendant Wise's actions were not retaliatory is
6  further supported by the fact that once the investigation was completed Plaintiff was promptly
7  removed from segregation and returned to the general population.  (Id. at 15.)

8  Additionally, Defendants argue they are entitled to qualified immunity because no
9  correctional officer would reasonably believe that their actions would have violated an inmate's
10  constitutional rights.  (Id. at 16.)

11  **C.**   **Plaintiff's Position**

12  Plaintiff claims that Defendants are not entitled to summary judgment because there is a huge
13  amount of evidence to support his claims.  (Plaintiff's Opposition to Defendants Quillen and Wise's
14  Motion for Summary Judgment 1, ECF No. 76.)  Plaintiff argues that Defendant Quillen had hold
15  of his left wrist all the way from his cell to the program office and this is the same wrist that
16  sustained injury.  While Defendants argue that Plaintiff sustained his injury from slipping his
17  handcuffs, they don't explain why only the wrist that Defendant Quillen had hold of was injured.
18  (Id. at 8.)

19  Defendant Quillen contradicts his own account of what happened during the escort because
20  in one description of the events he writes that Plaintiff was not actively walking and in another
21  description he states that Plaintiff was leaning back.  (Id. at 8-9.)  Plaintiff believes he is not required
22  by prison policy to give his name and identification number in response to Defendant Quillen's
23  request.  Additionally, Defendant Quillen wrote in one report that he and Officer Fujioka decided
24  to take Plaintiff to the program office and in another report Defendant Quillen stated he contacted
25  Sergeant Allen who instructed him to bring Plaintiff to the program office.  (Id. at 9.)  Plaintiff
26  argues that Defendant Quillen's motion should be denied due to the inconsistencies in his statements.
27  (Id. at 10.)

28  Plaintiff contends that Defendant Wise took adverse action against Plaintiff for doing exactly

19

what the CDCR policy gives him an absolute right to do.  Plaintiff followed the policy and was placed in administrative segregation for disciplinary reasons, proving the action was retaliatory. Plaintiff argues that Defendant Wise tried to get him to recant his claims against Defendant Quillen, and when he would not, Plaintiff was told that he would be placed in administrative segregation. (Id. at 11.)

Plaintiff states that the regulation relied on by Defendants does not apply to his situation because he did not present an immediate threat to the safety of himself or others.  He was on his assigned bunk when he was approached by Defendant Quillen.  Plaintiff did not endanger the safety of the institution or security by reporting the misconduct of Defendant Quillen.  Finally, Plaintiff could not have jeopardized the integrity of the investigation because Plaintiff was not being investigated for any misconduct on his part.  Therefore the regulation does not apply to him.  (Id. at 12.)  The evidence is clear that Plaintiff was placed in administrative segregation to punish him for reporting staff misconduct.  (Id. at 13.)

Plaintiff argues that Defendants are not entitled to qualified immunity because Defendant Quillen did not simply have hold of Plaintiff's hand as he contends, which is proven by the injuries Plaintiff sustained.  Defendant Wise knew exactly what he was doing by placing Plaintiff in administrative segregation to punish Plaintiff after Plaintiff reported the abuse by Defendant Quillen. The actions of the defendants were unreasonable and they are not entitled to qualified immunity. (Id. at 14.)

**D.   Defendants' Reply**

Defendants reply that their motion for summary judgment should be granted because Plaintiff failed to comply with the Local Rules, there is no evidence to support Plaintiff's claims, and they are entitled to qualified immunity.  (Defendants Quillen and Wise's Reply to Plaintiff's Opposition to Their Motion for Summary Judgment 1, ECF No. 77.)  Plaintiff did not comply Local Rule 260(b) because he failed to reproduce the itemized facts and deny those facts which are disputed.[14]  (Id. at

---

[14]As discussed above, the Court shall use Plaintiff's verified complaint and first amended complaint as evidence in opposition to Defendants' motion for summary judgment.  Defendant's request to have their motion granted based upon procedural deficiencies in Plaintiff's moving papers is denied.

2.) It is clear from the facts set forth by Plaintiff that there are no facts in dispute and Defendant Quillen's motion for summary judgment should be granted. (Id. at 3.)

Similarly, it is not disputed that immediately after reporting to Defendant Wise that Defendant Quillen had used excessive force against him, Plaintiff was ordered to be moved to administrative segregation. As a matter of common sense, it would have made no sense for Defendant Wise to do otherwise. Without such an order, Plaintiff would be left in the housing unit with the officer who allegedly just assaulted him. Removing Plaintiff was clearly an act consistent with policy and designed to ensure Plaintiff's safety and ensure that the investigation would not be impeded by Plaintiff's continued access to the officer who he alleged had assaulted him. It is clear this was the purpose since Plaintiff was released from administrative segregation promptly upon the completion of the investigation. (Id. at 4.)

Plaintiff's arguments are nonsensical. While Plaintiff argues that he was on his bunk when he was approached by Defendant Quillen, was not a threat, and Defendant Quillen decided to pull Plaintiff from his cell for not talking to him, what occurred prior to Plaintiff being removed from his cell is beside the point. Plaintiff alleges that Defendant Quillen assaulted him after he was removed from his cell. (Id.) Plaintiff's continued presence in the general population presented an immediate threat to the safety of an inmate, because if the allegations were true, Plaintiff's safety was threatened. Title 15 does not limit administrative segregation to those inmates who themselves have been accused of misconduct. It provides that inmates be placed in administrative segregation when their presence in the general population jeopardizes the investigation into misconduct or criminal activity. Plaintiff's presence in the general population would jeopardize the integrity of the investigation into the alleged misconduct of Defendant Quillen, and therefore, Defendant Wise's decision to place Plaintiff into administrative segregation was clearly appropriate. (Id. at 5.)

Finally, the actions of the defendants were in no way unreasonable or plainly incompetent, and they are entitled to qualified immunity. (Id. at 5-6.)

### E.  **Plaintiff's Objections**

Plaintiff opposes the declaration of Kimbrell which states that R. Lowe stated he did not see

anything on July 16, 2008, because it contradicts the memo dated September 25, 2008.  (Opp. To Reply to Dec. of Kimbrell, ECF No. 78.)  In the memo dated September 25, 2008, Correctional Officer Lowe states:

> On July 15, 2008, at approximately 1200 hours, I stepped out of the Facility III-A building 3405 Officer's Office, I over heard Officer T. Quillen ask Officer T. Fujioka for inmate Sheppard's [sic] identification card.  I informed Officer Fujioka that I had Sheppard's [sic] identification card on me.  I relinquished Sheppard's [sic] identification card to Officer Fujioka.  This concludes my involvement with this situation.

(ECF No. 73-1 at 284; ECF No. 75-3 at 7.)  The Court does not identify where in the declaration of Kimbrell it states that Officer Lowe failed to see anything.  However, the September 25, 2008, memorandum does not state that Officer Lowe observed any of the incidents that occurred between Defendant Quillen and Plaintiff, only that he heard Defendant Quillen ask for Plaintiff's identification card.  Therefore, even if the statement was made, it is not contradictory.  Plaintiff's objection is overruled.

Plaintiff opposes the declaration of Perez which includes the emergency care flow sheet showing Plaintiff's injuries.  Plaintiff states that the third impression of Plaintiff's wrist on August 1, 2008, still showed swelling fifteen days after the incident and an ace wrap was issued.  (Opp. To Dec. of Perez 1, ECF No. 79.)  On September 9, 2008, Plaintiff was issued a brace for his left wrist. (Id. at 2.)  The declaration of Perez contains copies of Plaintiff's medical records.  The emergency care flow sheet shows that Plaintiff was examined on July 15, 2008 for injuries to his left wrist. (ECF No. 74-7 at 5.)  Plaintiff fails to assert a valid grounds for objecting to the exhibit, and therefore, his objection is overruled.

Finally, Plaintiff alleges that Defendant Quillen perjured himself by contradictory statements made during the investigation and discovery conducted in this action.  Plaintiff states that in his report, Defendant Quillen reported that Plaintiff was not actively walking, while in the September 24, 2008, memo Defendant Quillen stated that Plaintiff was walking slowly.  (Plaintiff's Opp. Defendants Quillen and Wise's Response to Plaintiff's Statement of Undisputed Facts 8, ECF No. 81.)  Plaintiff also points out that in his report Defendant Quillen stated he and Officer Fujioka decided to escort Plaintiff to the program office, while his memo dated September 24, 2008, states

that Sergeant Allen instructed him to bring Plaintiff to the program office. (Id. at 9-10.) Lastly, Plaintiff claims that, in the request for interrogatories, Defendant Quillen was asked if he had hold of Plaintiff's left hand, the exact hand that was injured. Defendant Quillen responded that he does not know which hand was cut. However, in the incident report and September 24, 2008 memo, Defendant Quillen admitted to having hold of Plaintiff's left hand. (Id. at 10.)

The Court fails to find that the statements identified by Plaintiff show that Defendant Quillen perjured himself. The information chron completed by Defendant Quillen on July 156, 2008, states:

> On Tuesday July 15, 2008, at approximately 1150 Hours [sic], I was performing my 1200 hours close custody count. As I approached cell 3A05-139, the cell was dark with an inmate sitting on the upper bunk. I asked this inmate, who was later identified as inmate SHEPHARD [sic] (K-29682/3A05-139U), for his name and number. I instructed inmate SHEPHARD [sic] to submit to handcuffs, with compliance from him. I motioned for the control booth officer to open cell #139. I instructed inmate SHEPHARD [sic] to back out of his cell facing away from me an [sic] my partner. Inmate SHEPHARD [sic] abruptly backed out and turned to his right towards my partner, Officer T. Fujioka. I put my left hand on inmate SHEPHARD's [sic] left arm, above his left elbow and my right hand on his right arm above his right elbow and turned inmate SHEPHARD [sic] towards the wall. I asked officer Fujioka to get inmate SHEPHARD's [sic] I.D. out of his cell. Officer R. Lowe yelled from the 3A05 office door that he had inmate SHEPHARD's [sic] I.D. Officer Fujioka retrieved inmate SHEPHARD's [sic] I.D. from officer Lowe and identified this inmate as inmate SHEPHARD [sic]. Because of inmate SHEPHARD's [sic] behavior, officer Fujioka and I decided to escort inmate SHEPHARD [sic] to the 3A program office to have a CDCR 7219 performed on him. I had my right hand on inmate SHEPHARD's [sic] left hand and my left hand on inmate SHEPHARD's [sic] right arm. Inmate SHEPHARD [sic] resisted officer Fujioka and me all the way to the 3A program holding cell #1, where inmate SHEPHARD [sic] was placed. Inmate SHEPHARD [sic] resisted officer Fujioka and me by not actively walking. Inmate SHEPHARD [sic] was placed into holding cell #1 without any injuries to his person. Before officer Fujioka could remove the handcuffs from inmate SHEPHARD [sic] he slipped the handcuffs to the front cutting his wrist. Officer Fujioka performed an unclothed body search on inmate SHEPHARD [sic] with negative results. R.N. Flores performed a CDCR 7219 on inmate SHEPHARD [sic]. Inmate SHEPHARD [sic] was re-housed in 3A03-129L. Subject is aware of this documentation.

(ECF No. 75-3 at 5.)

The September 24, 2008, memo written by Defendant Quillen includes essentially the same information as the July 15, 2008 report, but adds that Defendant Quillen asked for the inmate's name and number, "with negative results. I called Sergeant Allen, 3A Facility Sergeant and notified her of the situation. Sgt. Allen instructed me to bring Sheppard [sic] to the program holding cell." (ECF No. 80 at 28.) Additionally, in describing Plaintiff's behavior during the escort, the memo states

1  "[a]long the way as Sheppard [sic] was being escorted, Sheppard [sic] was attempting to delay the

2  escort by walking slowing becoming difficult to escort." (Id.)

3       While Plaintiff argues that this discrepancy shows that Defendant Quillen has perjured

4  himself, it seems clear that the September 24, 2008, memo includes events that were left out of the

5  July 15, 2008 report. The July 15, 2008 report does not explain why Plaintiff was removed from his

6  cell, and therefore omits that Defendant Quillen spoke with the Sergeant prior to ordering Plaintiff

7  from the cell. Additionally, while Plaintiff claims that the descriptions of his behavior during the

8  escort is contradicted by the two statements, the Court fails to find that there is a significance

9  difference between the statements that Plaintiff was "not actively walking" and "was attempting to

10  delay the escort by walking slowly becoming difficult to escort." Contrary to Plaintiff's contention,

11  the statements in the two reports do not show that Defendant Quillen lied or perjured himself.

12       Finally, Plaintiff states that he requested in an interrogatory or request for admission, set one,

13  no. 21 that Defendant Quillen admit "You had an [sic] hold of Plaintiff [sic] left hand, the exact hand

14  that was injured." (ECF 80 at 10.) Defendant Quillen responded, "defendant does not know what

15  hand was cut of [sic] Plaintiff." (Id.) Plaintiff's Interrogatories, Set One does not contain a number

16  21, and Request for Admissions, Set One, Admission No. 21, does not ask for the admission set forth

17  above. A review of the discovery requests propounded by Plaintiff reveals that in Plaintiff's

18  Interrogatories, Set One, Interrogatory No. 23 asked "[a]fter Shepard was uncuffed was his wrist

19  bleeding." (ECF No. 73-1 at 84, Interrogatory No. 23.) Interrogatory No 24 asked "was this the

20  same wrist you had whole/hold [sic] of during the escort?' (Id., Interrogatory No. 24.) Defendant

21  responded that he "does not know which wrist the plaintiff cut." (Id. at 85.) The Court does not find

22  that Defendant Quillen's response to this interrogatory was misleading or amounted to perjury as

23  Plaintiff contends.

24       **F.   Discussion**

25       The Court finds that Defendants have met their initial burden of informing the Court of the

26  basis for their motion, and identifying those portions of the record which they believe demonstrate

27  the absence of a genuine issue of material fact. The burden therefore shifts to Plaintiff to establish

28

that a genuine issue as to any material fact actually does exist. *See* Matsushita Elec. Indus., 475 U.S. at 586 (1986).

### 1.    **Excessive Force**

The issue here is whether the force used by Defendant Quillen was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm. Hudson, 503 U.S. at 7. While Defendant Quillen contends that he merely held onto Plaintiff's hand and bicep during the escort, Plaintiff states that Defendant Quillen twisted his arm almost to the breaking point causing his wrist to sustain a fracture. Defendant Quillen argues that Plaintiff sustained the cuts and any additional injuries to his wrist by slipping his handcuffs to the front. Making credibility determinations, weighing the evidence, and drawing legitimate inferences are functions for the jury, not the judge. Bravo v. Santa Maria, 665 F.3d 1076, 1083 (9th Cir. 2011). These are factual disputes that cannot be resolved on summary judgment.

The Court finds that Plaintiff has met his burden of establishing that a triable issue of fact exists as to whether the force used during the escort was used in a good faith effort to maintain discipline or for the purpose of causing harm, and recommends that Defendant Quillen's motion for summary judgment be denied.[15]

### 2.    **Retaliation**

Plaintiff contends that Defendant Wise took adverse action against him by placing him in administrative segregation because of his protected conduct, reporting the misconduct of Defendant Quillen. Also, Plaintiff claims that placing an inmate in administrative segregation for reporting misconduct would chill an inmate's exercise of his First Amendment rights. Defendant Wise argues that Plaintiff was not placed in administrative segregation because of his protected activity, but to reasonably advance a legitimate correctional goal of protecting the integrity of the investigation into the alleged misconduct of Defendant Quillen and to protect Plaintiff.

Plaintiff argues that he has proven Defendant Wise retaliated against him because after

---

[15]Defendant Quillen fails to address Plaintiff's claim that after they arrived at the program office, Defendant Quillen pushed him on two separate occasions in an attempt to slam Plaintiff into the wall. Accordingly, those claims are still proceeding in this action.

Defendant Wise informed Plaintiff that he would be placed in administrative segregation, he asked Defendant Wise if he was going to be punished for reporting the conduct of Defendant Quillen. Defendant Wise answered affirmatively.  While Plaintiff construes being placed in administrative segregation as punishment, the Court fails to find that Defendant Quillen's affirmative response to Plaintiff's question establishes a retaliatory motive for Defendant Wise's decision to place Plaintiff in administrative segregation.

"A successful retaliation claim requires a finding that 'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals."  Pratt, 65 F.3d at 806.  It is Plaintiff's burden to prove the absence of legitimate correctional goals for the conduct he alleges was retaliatory.  Id.  Additionally, the court "should afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."  Id. at 807.

Defendant has presented evidence that the decision to place Plaintiff into administrative segregation was based on California Code of Regulations, Title 15 § 3335(a).  Therefore, Plaintiff must do more than merely deny the veracity of defendant's evidence.  Matsushita, 475 U.S. at 586.  Plaintiff must set forth specific facts showing there is a genuine issue for trial to avoid summary judgment.  See Fed. R. Civ. P. 56(e).

Plaintiff argues that section 3335(a) does not apply to him because he does not fall into any of the categories listed.  California Code of Regulations, Title 15 Section 3335(a) states:

> When an inmate's presence in an institution's general inmate population presents an immediate threat to the safety of the inmate or others, endangers institution security or jeopardizes the integrity of an investigation of an alleged serious misconduct or criminal activity, the inmate shall be immediately removed from the general population and be placed in administrative segregation.

Plaintiff contends that he was not a threat to the safety of himself or any other person while he was sitting on the bunk in his cell.  However, Defendant Wise did not make the decision to place Plaintiff into administrative segregation based upon what occurred prior to Plaintiff being escorted to the program office.  Defendant Wise presents evidence that he placed Plaintiff in administrative segregation for his own protection.  (ECF No. 74-5 at 13, Response to Interrogatory No. 4.) Defendant Wise argues that there was an immediate threat to the safety of Plaintiff because he had

just alleged that Defendant Quillen had assaulted him causing serious injury to his arm and wrist. Leaving Plaintiff on the same housing facility as Defendant Quillen would place Plaintiff at risk of another assault.  Administrative segregation may properly be used to protect a prisoner's safety, to protect other inmates from a particular prisoner, to break up disruptive groups of inmates, or to await completion of an investigation into misconduct charges.  Hewitt v. Helms, 459 U.S. 460, 468, 476-77 (1983) *overruled on other grounds by* Sandin v. Conner, 515 U.S. 472 (1995).

Prison authorities have a legitimate correctional goal in protecting the safety of inmates and if Defendant Quillen was assaulting Plaintiff for no reason, it was reasonable for Defendant Wise to place Plaintiff in administrative segregation to protect him from further contact with Defendant Quillen.  Further, while Plaintiff argues that he was not being investigated for any misconduct, the regulation at issue does not specify that the inmate must be accused of misconduct, and Plaintiff offers no evidence to support this reading of the statute.  See Tate v. Huskey, No. 1:02-cv-05707-AWI-SMS P, 2005 WL 1836920, *8 (E.D.Cal. Aug. 1, 2005) ("regardless of whether the misconduct was by staff or an inmate, such misconduct could jeopardize the safety of staff, the inmate and/or other inmates, the integrity of an investigation into the misconduct and/or the security of the institution").

In this instance, Plaintiff had accused Defendant Quillen of bending his arm almost to the breaking point causing serious injury to his wrist and shoulder because he was angry at Plaintiff for failing to tell Defendant his name and number.  Plaintiff further alleged that Defendant Quillen attempted to slam Plaintiff face first into a wall twice while his hands were cuffed behind his back. This would be serious misconduct on the part of Defendant Quillen.  The question is whether placing Plaintiff in administrative segregation advanced a legitimate correctional goal of not jeopardizing the investigation into the conduct of Defendant Quillen.

Defendant Wise found that leaving Plaintiff in the general population would jeopardize the investigation into the alleged misconduct of Defendant Quillen. (ECF No. 74-6 at 9.)  "Maintaining the integrity of an investigation into serious institutional misconduct is a legitimate penological interest."  Morris v. Hickison, No. 2:06-cv-02936-LKK-KJN P, 2010 WL 3034194, *12 (E.D.Cal. July 30, 2010) (*quoting* Bryant v. Cortez, 536 F.Supp.2d 1160, 1169 (C.D.Cal. 2008)).  Placing

Plaintiff in administrative segregation advanced the legitimate correctional goals of protecting Plaintiff and allowing prison officials to investigate his allegations without jeopardizing the investigation.

It is undisputed that an investigation into the conduct of Defendant Quillen occurred and that Plaintiff's placement in administrative segregation was ratified by a captain and the classification committee. Finally, while the parties both address the timing of Plaintiff's release following the conclusion of the investigation into Defendant Quillen's conduct toward Plaintiff, there is no evidence that Defendant Wise had any involvement in the decision to release Plaintiff back to the general population.

Although Plaintiff argues that he was placed in administrative segregation in retaliation for reporting the misconduct of Defendant Quillen, Defendant Wise has presented evidence that Plaintiff was placed in administrative segregation to reasonably advance a legitimate correctional goal. Rhodes, 408 F.3d at 567. Plaintiff has failed to establish a triable issue of material fact for his claim that Defendant Wise retaliated against Plaintiff by placing him in administrative segregation. Accordingly, Defendant Wise is entitled to judgment as a matter of law and his motion for summary judgment should be granted.

## G.   Qualified Immunity

Defendants argue that they are entitled to qualified immunity because their actions were reasonable under the circumstances. The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011) (citations omitted). To determine if an official is entitled to qualified immunity the court uses a two part inquiry. Saucier v. Katz, 533 U.S. 194, 200 (2001) overruled in part by Pearson, 555 U.S. 223. The court determines if the facts as alleged state a violation of a constitutional right and if the right is clearly established so that a reasonable official would have known that his conduct was unlawful. Ashcroft, 131 S. Ct. at 2083. This does not

1   require that the same factual situation must have been decided, but that existing precedent would

2   establish the statutory or constitutional question beyond debate.  Id.; Mattos v. Agarano, __ F.3d __,

3   2011 WL 4908374, *6 (9th Cir. 2011).  "The linchpin of qualified immunity is the reasonableness

4   of the official's conduct."  Rosenbaum v. Washoe County, 654 F.3d 1001, 1006 (9th Cir. 2011).

5        The inquiry as to whether the right was clearly established is "solely a question of law for the

6   judge."  Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting Tortu v. Las Vegas Metro.

7   Police Dep't., 556 F.3d 1075, 1085 (9th Cir. 2009)).  The court is "permitted to exercise their sound

8   discretion in deciding which of the two prongs of the qualified immunity analysis should be

9   addressed first in light of the circumstances in the particular case at hand."  Pearson, 555 U.S. at 236.

10  Finally, the right the official is alleged to have violated must be defined at the appropriate level of

11  specificity before the court can determine if it was clearly established.  Dunn, 621 F.3d at 1200.

### 1.   Defendant Quillen

12  While Defendant Quillen argues that he is entitled to qualified immunity, it is clearly

13  established that correctional officers violate the Eighth Amendment when they use force maliciously

14  and sadistically for the purpose of causing harm.  Martinez v. Stanford, 323 F.3d 1178, 1183 (9th

15  Cir. 2003).  There is a factual dispute as to whether Defendant Quillen twisted Plaintiff's arm and

16  attempted to slam him into the wall for the purpose of causing harm.  Where there are factual

17  disputes as to the parties' conduct or motives, the case cannot be resolved at summary judgment on

18  qualified immunity grounds.  See Liston v. County of Riverside, 120 F.3d 965, 967 (9th Cir. 1997);

19  Collins v. Jordan, 110 F.3d 1363, 1369 (9th Cir. 1997); Alexander v. City of San Francisco, 29 F.3d

20  1355, 1364 (9th Cir. 1994).  Defendant Quillen's motion for summary adjudication on the grounds

21  of qualified immunity should be denied.

### 2.   Defendant Wise

22  As discussed above, the Court has found that the conduct of Defendant Wise did not violate

23  Plaintiff's constitutional rights.  Accordingly Defendant Wise is entitled to qualified immunity, and

24  his motion for summary adjudication should also be granted on that ground.

25  ///

26  ///

**VI.**     **Conclusion and Recommendation**

For the reasons set forth above, the Court HEREBY RECOMMENDS that:

1.      Plaintiff's surreply, filed March 6, 2012, (ECF No. 82), be STRICKEN FROM THE RECORD;

2.      Plaintiff's motion for summary judgment, filed February 3, 2012, be DENIED;

3.      Defendants motion for summary judgment, filed February 8, 2012, be GRANTED IN PART AND DENIED IN PART AS FOLLOWS:

a.      Defendant Quillen's motion for summary judgment be DENIED; and

b.      Defendant Wise's motion for summary judgment be GRANTED.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:**   **May 30, 2012**                        **/s/ Barbara A. McAuliffe**
                                                                    UNITED STATES MAGISTRATE JUDGE

30